# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAFEGUARD PROPERTIES, LLC, <br> Petitioner, <br><br> v. <br><br> FREEDOM TRUCKING CO., INC. <br> Respondent. | CIVIL ACTION <br> NO. 20-12243-DHH |

## REPORT AND RECOMMENDATION

**July 7, 2021**

Hennessy, M.J.

Pursuant to General Order 09-3, this matter was assigned to me on December 18, 2020 as a referral under 28 U.S.C. § 636(b) for all pretrial non-dispositive matters, and Report and Recommendations. (Docket #7). Now pending before the Court is Petitioner Safeguard Properties, LLC's motion for default judgment against Respondent Freedom Trucking Co., Inc. (Docket #15). Petitioner's motion is ripe for adjudication. For the reasons that follow, I RECOMMEND Plaintiff's motion for default judgment be ALLOWED.

I.       BACKGROUND AND PROCEDURAL HISTORY[1]

Petitioner is a Delaware corporation with its principal place of business in Valley View, Ohio. (Docket #1 at ¶ 1). Respondent is a Massachusetts corporation with its principal place of business in Milford, Massachusetts. (Id. at ¶ 2). On December 3, 2015, Petitioner and Respondent entered into the Master Services Agreement ("MSA"), pursuant to which Respondent agreed to perform mortgage field services for Petitioner. (See Docket #1-2 at 14-26). The MSA contained an arbitration clause stipulating that any dispute regarding the MSA would be resolved via arbitration in Ohio under the rules of the American Arbitration Association ("AAA") and that "judgment may be entered upon [an arbitration award] by any court." (Id. at 23-24).

On May 28, 2020, Petitioner filed a Demand for Arbitration against Respondent, claiming that Respondent had breached the terms of the MSA, which caused Petitioner to incur losses in the amount of $123,225.47. (Docket #1 at ¶¶ 12-13). Respondent failed to file an answer and did not appear for the preliminary hearing before the arbitrator. (Id. at ¶¶ 14-15). On August 18, 2020, Petitioner moved for default judgment against Respondent with the AAA. (Id. at ¶ 16, 30-33). Despite receiving advance notice, Respondent failed to appear for the hearing on the motion for default judgment. (Id. at ¶ 17).

On August 31, 2020, the arbitrator granted Petitioner's motion via an Interim Order, which was sent to Respondent on September 1, 2020. (Id. at ¶¶ 18-19). The arbitrator issued a Final Award on September 4, 2020, awarding Petitioner $123,225.47 in damages, $3,047.50 in

---

[1] Under Fed. R. Civ. P. 55, the entry of default against Respondent in this action constitutes an admission of liability. Sec. & Exch. Comm'n v. Esposito, 260 F. Supp. 3d 79, 84 (D. Mass. 2017). Respondent is therefore "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." Id. (quoting In re The Home Restaurants Inc., 285 F.3d 111, 114 (1st Cir. 2002)). "On a motion for a default judgment, however, it is appropriate to independently 'examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.'" Id. (quoting Ramos–Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002)). Accordingly, the facts are drawn primarily from Petitioner's complaint.

attorney's fees, and $1,925.00 in arbitration costs, for a total of $128,197.97. (Id. at ¶¶ 11, 20). The Final Award further ordered Respondent to pay the foregoing sums on or before twenty-one days from the date of the award. (Docket #1-2 at 7). A copy of the Final Award was sent to Respondent on September 8, 2020. (Docket #1 at ¶ 21). Respondent has not paid the amount due under the arbitration award to date. (Id. at ¶ 22).

On December 17, 2020, Petitioner commenced the instant action by filing a complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., requesting the Court to confirm the arbitration award issued against Respondent. (Docket #1). Specifically, Petitioner requests this Court to confirm the arbitration award; enter judgment in favor of Petitioner in conformity with the arbitration award in the amount of $128,197.97 as well as the cost of attorney's fees incurred from September 4, 2020 to date, with interest at the rate of 12% per year from September 4, 2020 until paid; and such other and further relief as the court deems proper. (Id. at 4).

On December 22, 2020, the Clerk of Court issued a summons to Respondent. (Docket #8). The summons was returned executed on December 29, 2020, indicating that Respondent was served with copies of the summons and complaint. (Docket #11). Respondent's responsive pleading was due January 19, 2021. After Respondent's time to respond had lapsed, Petitioner submitted a request for the Clerk of Court to enter Respondent's default pursuant to Federal Rule of Civil Procedure 55(a). (Docket #13). The Clerk entered Respondent's default on February 8, 2021. (Docket #14). On February 10, 2021, Petitioner filed a motion for default judgment against Respondent pursuant to Fed. R. Civ. P. 55(b), (Docket #15), along with an affidavit of support from Mary Cleland, (Docket #17). Petitioner also filed a proposed motion for default judgment, seeking judgment in the amount of $128,197.97, and an award of attorney's fees in the amount of

$4,500.00 and prejudgment interest at the rate of 12% from September 4, 2020. (Docket #15-1). Respondent has not opposed the motion to date.

On April 22, 2021, the Court ordered Petitioner to file an affidavit setting forth its reasonable fees and costs. (Docket #19). Petitioner filed a responsive affidavit on April 29, 2021. (Docket #20).

II. LEGAL STANDARD

A default judgment may be entered without a hearing under Fed. R. Civ. P. 55(b) if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002). "Default judgment is appropriate '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise.'" Mantouvalos v. Mantouvalos, 319 F.R.D. 420, 421 (D. Mass. 2017) (alteration in original) (quoting AngioDynamics, Inc. v. Biolitec, Inc., 966 F. Supp. 2d 71, 73 (D. Mass. 2013)). However, a grant of default judgment is a "drastic sanction that runs contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results." Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009) (quotations omitted). Yet the entry of a default judgment "plays a constructive role in maintaining the orderly and efficient administration of justice." Id. at 51 (quoting KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003)).

III. ANALYSIS

Petitioner has moved for default judgment against Respondent based on its failure to appear in this action and answer or otherwise defend against Petitioner's claims pursuant to Fed. R. Civ. P. 55(b)(1). Specifically, Petitioner seeks default judgment in the amount of $128,197.97, and an

award of attorney's fees in the amount of $4,500.00 and prejudgment interest at the rate of 12% from September 4, 2020.  (Docket #1 at 4; Docket #15-1).

A.     Entering Default Judgment

    1.     Subject Matter Jurisdiction

Here, the Court has subject matter jurisdiction based on diversity of citizenship.[2]  Diversity jurisdiction exists when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the petitioner and respondent are citizens of different States.  28 U.S.C. § 1332(a).  Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  Petitioner is a Delaware corporation with its principal place of business in Valley View, Ohio.  (Docket #1 at ¶ 1).  Respondent is a Massachusetts corporation with its principal place of business in Milford, Massachusetts.  (Id. at ¶ 2).  Furthermore, Petitioner's complaint seeks a judgment of at least the amount of the arbitration award, which is a total of $128,197.97 in damages, attorney's fees, and arbitration costs.  (Id. at ¶ 11).  Thus, Petitioner and Respondent are citizens of different States and the amount in controversy exceeds $75,000.

    2.     Personal Jurisdiction

The Court also has personal jurisdiction over Respondent.  Under the Due Process Clause of the Fourteenth Amendment, "[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  "With respect to a corporation, the place of incorporation and

---

[2] Because the FAA itself does not create a basis for federal subject matter jurisdiction, there must be an independent basis for federal jurisdiction.  See PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32, 34-35 (1st Cir. 1998) (no federal jurisdiction over FAA action where plaintiff failed to demonstrate federal question as independent basis for federal subject matter jurisdiction).

principal place of business are paradigm bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (quotation and alterations omitted). Here, Respondent is incorporated in and has its principal place of business in Massachusetts. (Id. at ¶ 2). The Court therefore has general jurisdiction over Respondent.

The existence of personal jurisdiction is also normally dependent on legally sufficient service of process. See Vazquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014) (voiding default judgment where service on defendant was insufficient); Echevarria–Gonzalez v. Gonzalez–Chapel, 849 F.2d 24, 28 (1st Cir. 1988) ("A defendant must be served in accordance with Fed. R. Civ. P. 4, in order for the court to secure personal jurisdiction over him"). Federal Rule of Civil Procedure 4 sets forth the acceptable methods for service of process. Rule 4(h) permits service on a corporation by delivering a copy of the summons and the complaint to "an officer," a "managing or general agent," or any other agent authorized to accept service on behalf of a corporation. Fed. R. Civ. P. 4(h)(1)(B).

Here, the complaint was filed on December 17, 2020, (Docket #1), and Petitioner had ninety days to serve Respondent under Rule 4(m). The record before the Court indicates that on December 29, 2020, a process server delivered a copy of the summons and complaint to Kim,[3] Office Manager for Respondent, at 76 Haven, Milford, Massachusetts. (Docket #11 at 2). The undersigned finds that service of process was properly effectuated and thus this Court may exercise personal jurisdiction over Respondent.

3.  Cognizable Claim for Relief

Under the FAA, a party to an arbitration may apply within one year for a judicial order confirming the arbitration award. 9 U.S.C. § 9. Upon receipt of such an application, a court must

---

[3] The proof of service does not indicate a full name. (See Docket #11 at 2).

confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed by sections 10 and 11" of Title 9.  Id.; see Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 42 (1st Cir. 2017).  The court's review of an arbitrator's decision is "extremely narrow and exceedingly deferential."  Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001) (quoting Bull HN Info. Sys. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000)).  Indeed, "judicial review of an arbitration award is among the narrowest known to the law."  Coastal Oil v. Teamsters Local 25, 134 F.3d 466, 469 (1st Cir. 1998).  "The burden is on the party challenging the arbitral award to establish substantially more than an erroneous conclusion of law or fact."  Loc. Union No. 251 v. Narragansett Improv. Co., 503 F.2d 309, 312 (1st Cir. 1974).

Here, the arbitration award is in full and final settlement of all claims submitted in the arbitration proceeding.  (Docket #1 at 8).  The award has not been vacated, modified, or corrected as prescribed in sections 10 and 11 of the FAA.  See 9 U.S.C. §§ 10, 11.  Accordingly, the undersigned finds that Petitioner has established a claim for and is entitled to confirmation of the arbitration award and entry of judgment in conformity with the award pursuant to the FAA.  See 9 U.S.C. §§ 9, 13.

    4.       Fair Opportunity to Object

Under Fed. R. Civ. P. 12(a), a responsive pleading was due from Respondent on January 19, 2021, twenty-one days after the summons was served by personal service on Respondent.  (See Docket #11).  To date, Respondent has not filed an answer or otherwise moved with respect to the complaint.  On February 4, 2021, Petitioner filed a request for entry of default as to Respondent.  (Docket #13).  The request for entry of default was served on Respondent by first class mail.  (Id. at 2).  The Clerk of Court entered default against Respondent on February 8, 2021.  (Docket #14).

The motion for default judgment and materials in support were mailed by first class mail to Respondent on February 10, 2021. (Docket #15).

Respondent has neither appeared in this action nor has it indicated a desire to contest the action. Petitioner has shown "by affidavit or otherwise" that Respondent has failed to plead or otherwise defend in this act as required by Fed. R. Civ. P. 55(a). (See Docket #16, 17). For these reasons, the undersigned finds that default judgment should be entered against Respondent.

B.    Attorney's Fees and Prejudgment Interest

Petitioner also seeks attorney's fees and costs in the amount of $4,500.00 and interest at the rate of 12% per year from September 4, 2020. (Docket #1 at 4; Docket #15-1). As a preliminary matter, a district court's award of attorneys' fees and prejudgment interest is governed by relevant state law when the court's jurisdiction is based on diversity of the parties. See Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 273 (1st Cir. 1990) ("The availability of attorney's fees in diversity cases depends upon state law[.]"); Com. Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 774 (1st Cir. 1994) (applying state law to determine prejudgment interest in a diversity case). Having determined that state law governs these matters, the court must apply the choice of law rules of Massachusetts, the forum state, to determine which state's laws apply. See Allstate Ins. Co v. Occidental Int'l, Inc., 140 F.3d 1, 3 (1st Cir. 1998) ("A federal court sitting in a diversity case must apply the choice of law rules of the forum state") (quotation omitted).

In this case, the MSA contains a choice of law clause providing that, "Except as provided in Section 32 relating to arbitration and the applicability of the Federal Arbitration Act, this Agreement shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to its conflicts of laws principles." (Docket #1-2 at 23). In Massachusetts, a contract's choice of law provision is generally honored, provided that it does not conflict with

8

public policy. Feeney v. Dell Inc., 454 Mass. 192, 206 (2009) ("Where parties have specifically expressed an intent as to the governing law, we respect that intent unless the result would be contrary to our public policy."). Under these circumstances, Massachusetts law directs that the Court apply Ohio law in determining whether attorney's fees and prejudgment interest are warranted in this case.

    1.    Attorney's Fees and Costs

The MSA contains an indemnification clause that requires Respondent to reimburse and indemnify Petitioner for attorneys' fees and costs relating to "any failure or alleged failure by [Respondent] . . . to satisfactorily fulfill all of [Respondent's] obligations under this Agreement." (Docket #1-2 at 20). Under Ohio law, "agreements to pay another's attorney fees are generally enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." Wilborn v. Bank One Corp., 906 N.E.2d 396, 400 (Ohio 2009) (internal citation and quotation omitted); see also Worth v. Aetna Cas. & Sur. Co., 513 N.E.2d 253, 256-57 (Ohio 1987) (an indemnity agreement requiring payment of legal expenses arising from "free and understanding negotiation" is enforceable and not contrary to Ohio's public policy.).

"As a general matter, a party seeking an award of attorney fees bears the burden of proving the reasonableness of those fees. This burden of proof must be met regardless of an agreement to pay attorney fees." Columbus Check Cashers, Inc. v. Rodgers, No. 08AP-149, 2008 WL 4684781, at *5 (Ohio Ct. App. Oct. 23, 2008) (internal citation omitted). When calculating the amount of attorney fees to be awarded, "a trial court is guided by a two-step determination." Lamar Advantage GP Co. v. Patel, No. CA2011–10–105, 2012 WL 2988819, at *6 (Ohio Ct. App. July 23, 2012). "The court should first calculate the 'lodestar' amount by multiplying the number of

hours reasonably expended by a reasonable hourly rate and, second, decide whether to adjust that amount based on the factors listed in Prof. Cond. R. 1.5(a)." Id. "Those factors include the time and labor required; the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; the amount involved and the results obtained; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent." Id. (citing Prof. Cond. R. 1.5(a)).

Here, Attorney Anderson has submitted an affidavit seeking costs and attorney's fees of $4,500.00. (Docket #20). The Invoice Summary attached to the affidavit describes the various work performed in the case and the amount of time spent in each activity, reflecting a total of 15.5 expended hours. (Docket #20-1). The Invoice Summary also indicates that Attorney Anderson's hourly rate is $280.00. (Id.).

Attorney Anderson does not describe her qualifications in the affidavit. However, her law firm's website indicates that she graduated from law school in 2015 and that she is a trial attorney in the firm's litigation department with a focus in the area of professional liability and insurance coverage litigation.[4] She has previously represented businesses, law firms, and business owners against breach of contract claims and has successfully defended cases in state court and the Massachusetts Appeals court.

Considering the nature of the work performed and the qualifications of Attorney Anderson, the undersigned finds that an hourly rate of $280.00 is reasonable. See State ex rel. Harris v. Rubino, 126 N.E.3d 1068, 1070 (Ohio 2018) ("A reasonable hourly rate is the prevailing market rate in the relevant community given the complexity of the issues and the experience of the attorney."); Tri–City Cmty. Action Program, Inc. v. City of Malden, 680 F. Supp. 2d 306, 315-16

---

[4] See Avana. A. Anderson, Peabody & Arnold, https://www.peabodyarnold.com/attorney/avana-a-anderson/ (last visited July 6, 2021).

(D. Mass. 2010) (approving $275 hourly rate for ninth year associate and $225 hourly rate for second year associate in an Americans with Disabilities Act case); Rogers v. Cofield, 935 F. Supp. 2d 351, 383 (D. Mass. 2013) (approving $325 hourly rate for seventh year associate and approving $225 hourly rate for second year associate who performed relatively complex work in a civil rights case); Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 198 (D. Mass. 2013) (awarding $265 per hour to associate who did substantial work in an ADA case).

The undersigned further finds that the 15.5 total expended hours is reasonable. Multiplying the reasonable number of hours expended by the reasonable hourly rate – 15.5 hours expended at a $280.00 hourly rate for Attorney Anderson – results in a lodestar amount of $4,340.00. Finally, having considered Attorney Anderson's affidavit in conjunction with the factors used by Ohio courts to determine the reasonableness of attorneys' fees, the undersigned finds no reason to vary from the lodestar amount. The undersigned therefore finds that Attorney Anderson is entitled to $4,340.00 in attorney's fees. The affidavit also indicates that costs in at least the amount of $160 were expended. Thus, the undersigned recommends awarding Petitioner $4,500 in fees and costs.

2.   Prejudgment Interest

An award of prejudgment interest is governed by Ohio Revised Code 1343.03(A), which provides that, "when money becomes due and payable upon . . . all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of . . . a contract or other transaction, the creditor is entitled to interest" at a rate to be determined under the Ohio code, "unless a written contract provides a different rate." R.C. § 1343.03(A).

In contract cases, as here, the prevailing plaintiff is entitled to prejudgment interest as a matter of law. Kott Enters., Inc. v. Brady, No. L-03-1342, 2004 WL 3017255, at *10 (Ohio Ct. App. Dec. 30, 2004). Once judgment is rendered for the plaintiff, the only issue remaining for the

trial court to resolve with respect to prejudgment interest is how much interest is due. Brondes Ford, Inc. v. Habitec Sec., 38 N.E.3d 1056, 1092 (Ohio Ct. App. 2015). To properly award prejudgment interest, the trial court must make factual findings about the date the interest begins to accrue and the rate of interest that applies. Zunshine v. Cott, No. 06AP-868, 2007 WL 926969, at *7 (Ohio Ct. App. Mar. 29, 2007).

"Prejudgment interest accrues on a contract claim from the time that the money due to the plaintiff should have been paid." Quest Workforce Solutions v. Job1 USA, Inc., 119 N.E.3d 817, 825 (Ohio. Ct. App. 2018). "Ohio law vests the trial court with great discretion in determining the date of accrual for prejudgment interest." Century Bus. Servs., Inc. v. Utica Mut. Ins. Co., 122 F. App'x 196, 204 (6th Cir. 2005) (citing Landis v. Grange Mut. Ins. Co., 695 N.E.2d 1140, 1142 (Ohio 1998) ("whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration or damages would have ended . . . or some other time . . . is for the trial court to determine.")).

In this case, the MSA does not provide for a different prejudgment interest rate. Thus, the interest rate is determined by the Ohio code. The arbitration award indicates that $128,197.97 was due to Petitioner on or before twenty-one days from September 4, 2020. (Docket #1 at ¶ 11, 20; Docket #1-2 at 7). Accordingly, Petitioner is entitled to prejudgment interest from September 25, 2020 until judgment.

Under the Ohio Revised Code, the annual interest rate used to calculate prejudgment interest is the "federal short-term rate" rounded to the nearest whole percent plus three percent. See R.C. §§ 1343.03(A), 5703.47. Here, the applicable interest rates are 5% in 2020 and 3% in 2021. Annual Certified Interest Rates, Ohio Dep't of Taxation, https://www.tax.ohio.gov/ohio_individual/individual/interest_rates.aspx. As such, Respondent

owes the sum of the following: (5%*$128,197.97) *(97/366) in 2020[5] and (3%*$128,197.97) *(188/365) in 2021.  See Marathon Petroleum Co., LP v. Noil Petroleum Corp., No. 3:16-CV-2694, 2020 WL 435419, at *7 n. 6 (N.D. Ohio Jan. 28, 2020), aff'd, 835 F. App'x 1 (6th Cir. 2020). Thus, the undersigned finds that Respondent is entitled to prejudgment interest in the amount of $3679.72.

V.      CONCLUSION

As the parties have not consented to my jurisdiction, I hereby direct the clerk to reassign this case to a District Judge with the RECOMMENDATION that, for the foregoing reasons, the motion for default judgment against Respondent (Docket #15) be ALLOWED to the extent that Petitioner be awarded a default judgment in the amount of $128,197.97, costs and attorney's fees of $4,500.00 and prejudgment interest of $3,679.72, for a total award of $136,377.69.[6]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[5] 2020 is a leap year.

[6] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).